# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| EDWIN JERMAINE DANIELS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 16-CV-058-TCK-PJC |
| | ) | |
| JANET DOWLING, Warden,[1] | ) | |
| | ) | |
| Respondent. | ) | |

## **OPINION AND ORDER**

Before the Court is Petitioner Edwin Jermaine Daniels' habeas corpus petition under 28 U.S.C. § 2254 (Dkt. 1). Petitioner challenges his Tulsa County District Court convictions for burglary, armed robbery, and assault, Case No. CF-2012-4773. Dkt. 1 at 1. For the reasons below, the Court will deny the petition.

**I. Background**

This case stems from a series of home invasions during the summer of 2012. Dkt. 9-1 at 8-25. Between June 17, 2012 and July 26, 2012, Petitioner and a co-conspirator entered six homes and robbed the occupants at gunpoint. *Id.* In most cases, the occupants were also bound or confined until the men exited the home. *Id.* Police eventually apprehended Petitioner at his girlfriend's apartment complex, where they discovered a number of televisions and other stolen goods. Dkt. 10-5 at 91-93.

---

[1] Petitioner is incarcerated at the Dick Conner Correctional Center (DCCC) in Hominy, Oklahoma. Janet Dowling, Warden of the DCCC, is therefore substituted in placed of Joe Allbaugh as party Respondent. *See* Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts. The Clerk of Court shall note the substitution on the record.

On October 24, 2012, the State filed a 26-count Indictment (Information) against Petitioner and co-conspirator Michael Darnell Hillard. Dkt. 10-13 at 69. The charges included, inter alia, first degree burglary, robbery with a firearm, kidnapping, and assault. Id. Following a jury trial, Petitioner was convicted of the following counts:

(Counts 1, 10, 18, 20, and 23): first degree burglary (OKLA. STAT. tit. 21, § 1431);

(Counts 2, 11, 15, 21, and 24): robbery with a firearm (OKLA. STAT. tit. 21, § 801);

(Count 19): attempted robbery with a firearm (OKLA. STAT. tit. 21, § 801);

(Counts 3 and 25): assault while masked or disguised (OKLA. STAT. tit. 21, § 1303); and

(Counts 12 and 16): kidnapping (OKLA. STAT. tit. 21, § 741).

Dkt. 9-3 at 1. In accordance with the jury's recommendation, the state court sentenced Petitioner to a total term of 307 years imprisonment. Dkt. 10-12 at 6-10.

Petitioner perfected a direct appeal to the Oklahoma Court of Criminal Appeals ("OCCA"). Dkt. 9-1. His appellate counsel raised three propositions of error:

(Propositions 1, 2, and 4): Instructional error.

(Proposition 3): Prosecutorial misconduct.

(Proposition 5): Ineffective assistance of counsel.

Id. at 2. By a Summary Opinion entered May 26, 2015, the OCCA found that the state court erred by instructing the jury about a mandatory $10,000 fine and vacated the fines. Id. at 4. The OCCA determined the remaining jury instructions were proper; the prosecutor did not commit misconduct; and trial counsel provided capable assistance. Id. The OCCA therefore affirmed Petitioner's conviction and sentence. Id.

Petitioner filed the instant § 2254 Petition (Dkt. 1) on February 2, 2016. He identifies essentially the same grounds for relief as he raised on appeal. Respondent filed a Response (Dkt. 9) along with copies of the state court record (Dkt. 10). Respondent concedes, and the Court finds, that the petition is timely and the exhaustion requirement is satisfied. *See* Dkt. 9 at 3; *see also* 28 U.S.C. §§ 2244(d)(1), 2254(b)(1)(A). The matter is ready for a merits review.

## II. Discussion

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs this Court's review of petitioner's habeas claims. *See* 28 U.S.C. § 2254. Relief is only available under the AEDPA where the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Further, because the OCCA already adjudicated petitioner's claims, this Court may not grant habeas relief unless he demonstrates that the OCCA's ruling: (1) "resulted in a decision that was contrary to . . . clearly established Federal law as determined by Supreme Court of the United States," 28 U.S.C. § 2254(d)(1);[1] (2) "resulted in a decision that . . . involved an unreasonable application of clearly established Federal law," *id.*; or (3) "resulted in a decision that was based on an unreasonable determination of the facts" in light of the record presented to the state court, *id.* at § 2254(d)(2).

"To determine whether a particular decision is 'contrary to' then-established law, a federal court must consider whether the decision 'applies a rule that contradicts [such] law' and how the

---

[1] As used in § 2254(d)(1), the phrase "clearly established Federal law" means "the governing legal principle or principles" stated in "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)); *see also House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008) (explaining that "Supreme Court holdings—the exclusive touchstone for clearly established federal law—must be construed narrowly and consist only of something akin to on-point holdings").

decision 'confronts [the] set of facts' that were before the state court." *Cullen v. Pinholster,* 563 U.S. 170, 182 (2011) (alterations in original) (quotations omitted). When the state court's decision "identifies the correct governing legal principle in existence at the time, a federal court must assess whether the decision 'unreasonably applies that principle to the facts of the prisoner's case." *Id.* (quotations omitted). Significantly, an "unreasonable application of" clearly established federal law under § 2254(d)(1) "must be objectively unreasonable, not merely wrong." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quotations omitted). "[E]ven clear error will not suffice." *Id.* Likewise, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Court must presume the correctness of the OCCA's factual findings unless petitioner rebuts that presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Essentially, the standards set forth in § 2254 are designed to be "difficult to meet," *Harrington v. Richter,* 562 U.S. 86, 102 (2011), and require federal habeas courts to give state court decisions the "benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). A state prisoner ultimately "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

**Grounds 1 and 4: Instructional Error**

In Ground 1, Petitioner appears to argue that the state court diluted the burden of proof by issuing an instruction that references the use of common sense and "speaking the truth." Dkt. 1 at

4

4; *see also* Dkt. 9-1 at 2.[2] In Ground 4, he contends the trial court should have *sua sponte* given an instruction on expert witness testimony. Dkt. 1 at 9; *see also* Dkt. 9-1 at 2. The OCCA rejected both arguments, holding: "the [common sense] instruction did not affect the outcome of the proceeding, did not result in a miscarriage of justice, and did not lessen the burden of proof cleared stated in the instructions, when read as a whole." Dkt. 9-3 at 3-4. The OCCA further found that the failure to give a cautionary instruction on expert testimony was not prejudicial because Petitioner failed to "show[] that the expert testimony was not credible or reliable, or that it was given undue weight by the jury." *Id.* at 5.

Federal habeas courts have a limited role in evaluating jury instructions. Relief is only available if instructional errors "had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial in a constitutional sense." *Shafer v. Stratton*, 906 F.2d 506, 508 (10th Cir. 1990) (quotations omitted). Petitioner's burden under this test is "greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). "The question is not whether the instruction[s] [were] undesirable, erroneous, or even universally condemned, but whether the instruction[s] so infected the trial that the resulting conviction violates due process." *Maes v. Thomas,* 46 F.3d 979, 984 (10th Cir. 1995) (quotations omitted). "[B]ecause a fundamental-fairness analysis is not subject to clearly definable legal elements, when engaged in such an endeavor a federal court must tread gingerly and exercise considerable self restraint." *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002) (quotations omitted). Further, where the petitioner relies on the omission of instructions rather than the provision of an erroneous

---

[2] The Court looks to Petitioner's appellate brief to discern his argument, as he cites the brief each ground in the habeas petition.

5

instruction, the burden is especially heightened. *Tyler v. Nelson*, 163 F.3d 1222, 1227 (10th Cir. 1999). As the Tenth Circuit explained: "an omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Id.* (quoting *Maes,* 46 F.3d at 984) (remaining citations omitted).

### A. Instruction No. 45

With respect to Ground 1, the challenged instruction (No. 45) provides, in relevant part:

> The Court has made rulings on the admissibility of evidence during this trial. These rules were based on our rules of evidence and have no bearing on the merits of the claims of any party. You should not allow these rulings to influence your decisions about the facts in any way.
>
> Your decision in this case should be based wholly on the evidence, **your common sense** and these instructions, rather than on sympathy, sentiment, or prejudice. **It is your duty under oath as a juror to make your verdict speak the truth.**
>
> Every rule of law needed to resolve the issues between the parties is contained in these instructions. … The instructions should be considered as a whole and you should not give undue emphasis to some instructions and ignore others.

Dkt. 10-14 at 95 (emphasis added).

After reviewing the record, the Court agrees that the highlighted language did not render the trial fundamentally unfair. The Tenth Circuit's own pattern instruction on the burden of proof provides: "A reasonable doubt is doubt based on reason and *common sense* after careful and impartial consideration of all of the evidence …." *United States v. Waldron*, 2018 WL 6192077, at *7 (10th Cir. Nov. 27, 2018) (quoting pattern instruction with approval) (emphasis added). Further, the Tenth Circuit explicated rejected the argument that the pattern instruction impermissibly shifted the burden of proof. *See United States v. Kieffer*, 681 F.3d 1143, 1158 (10th Cir. 2012) (the instruction did not "deny [the] defendant his right to have the Government prove,

6

and a jury find, him guilty beyond a reasonable doubt"). The reference to common sense therefore did not violate Petitioner's due process rights.

The Court is also not convinced that the trial was tainted by the instruction to "make [the] verdict speak the truth." Oklahoma law requires jurors to render a "true verdict … according to the evidence." OKLA. STAT. tit. 22, § 601. *See also* Salazar v. State, 852 P.2d 729, 733 (Okla. Crim. App. 1993) (stating Oklahoma law requires jurors swear they will render a "true verdict" according to the evidence). Federal courts have also consistently declined to vacate a conviction after the judge or prosecutor directs jurors to "speak the truth." *See, e.g., Williams v. Workman*, 2012 WL 5197674, at *28 (N.D. Okla. Oct. 19, 2012) (finding no misconduct based on prosecutor's instruction: "Your verdict is to speak the truth") *aff'd sub nom. Williams v. Trammell*, 782 F.3d 1184 (10th Cir. 2015); *Waters v. Thomas,* 46 F.3d 1506, 1524 (11th Cir. 1995) (finding no prosecutorial misconduct where prosecutor asked jurors to "return a verdict that speaks the truth"); *Steurer v. Crews*, 2013 WL 4096120, at *22 (N.D. Fla. Aug. 11, 2013) (same). The Court will therefore not disturb the OCCA's conclusion that Instruction No. 45 comports with due process and principles of fairness.

B. Failure to Give Instruction No. 9-42

Petitioner also contends the state court failed to *sua sponte* give Instruction No. 9-42. That instruction contains cautionary advice on the consideration of expert testimony. It provides:

> Testimony has been introduced of certain witnesses who purport to be skilled in their line of endeavor or who possess peculiar knowledge acquired by study, observation, and practice. You may consider the testimony of these witnesses, and give it such weight and value as you think it should have, but the weight and value to be given their testimony is for you to determine. You are not required to surrender your own judgment to that of any person testifying, based on that person's education, training, or experience. You need not

> give controlling effect to the opinion of such witnesses for their testimony, like that of any other witness, is to be received by you and given such weight and value as you deem it is entitled to received.

Instruction 9-42, OUJI-CR(2d).

Petitioner believes the instruction was necessary to limit the testimony of two forensic experts, Michelle Gorges and Ivy Rabe. Gorges testified that she matched Petitioner's prints to the window of the Pollard home. Dkt. 13-3 at 107-108. She found at least eight points of similarly between Petitioner's print and the print from the window, which made her certain Petitioner touched the window. *Id.* at 113. Rabe testified that Petitioner's DNA information, and in particular his alleles, were consistent with a cigarette butt in the Young home. Dkt. 10-4 at 117-121.

Having reviewed the record, the Court agrees with the OCCA that petitioner received a fair trial despite the absence of an instruction regarding expert testimony. Gorges and Rabe were thoroughly cross-examined about the forensic process. Gorges' testimony about the fingerprint in the Pollard home was consistent with that of Mr. Pollard, who identified Petitioner as the home invader with "hundred percent" certainty at trial. Dkt. 10-3 at 58. Rabe's testimony about the DNA on the cigarette in the Young home supports the testimony of Rona Young, who identified her stolen property in the pictures from the apartment leased to Petitioner's girlfriend. Dkt. 10-4 at 81-82. The state court also instructed the jury to weigh the credibility of each witness considering the relationship of the witness to the parties as well as the witness' bias, candor, memory, and opportunity of knowing the matters about which she has testified. *See* Dkt. 10-14 at 54; *see also Foster v. Ward*, 182 F.3d 1177, 1193 (10th Cir. 1999) (suggesting credibility instruction can help offset prejudice caused by the absence of an accomplice-testimony instruction). The Court therefore finds that the OCCA properly declined to reverse the conviction based on instructional

8

error, and that the challenged instructions did not change the outcome at trial. Petitioner is not entitled to habeas relief on Ground 1 or Ground 4.

**Ground 2: Prosecutorial Misconduct**

In Ground 2, Petitioner contends the prosecutor's remarks during closing argument deprived him of a fair trial. Dkt. 1 at 6. The prosecutor argued:

(i) "Common sense tells you that those two men committed each and every one of those crimes;"

(ii) "The Judge told you in his closing instructions that your verdicts are to speak the truth, and the State of Oklahoma is asking you to come back on each and every one of those verdict forms with guilty;" and

(iii) "[T]here's a final closing charge that Judge Caputo gives in every trial and I'm a huge fan of it, because he says that your verdict is to be rendered based on common sense which you each possess with each other, … He's right."

(iv) "[I]n regards to Edwin Daniels, when do you want him back?"

Dkt. 9-1 at 32-33.

As with the jury instructions, Petitioner argues the remarks about common sense and speaking the truth impermissibly shifted the burden of proof. He also argues the question "when do you want him back" suggests he will commit future crimes.

The OCCA considered and rejected these arguments, holding:

> The prosecutor's argument urging the jury to use common sense did not constitute error and most certainly did not lessen the burden of proof clearly stated in the instructions. … [Petitioner] complains about the prosecutor's question during sentencing argument, "When do you want him back?" This Court has consistently held that it is improper for the State to urge a jury to convict a defendant because he will commit future crimes.…When, however, the comments do not affect the sentence, the error requires no relief from this

9

> Court.… The isolated comment did not affect the sentence. Overall, the prosecution argued that these crimes were heinous and that the defendants (specifically [Petitioner]) deserved the maximum sentence available.

Dkt. 9-3 at 4-5.

Having reviewed the record, the Court agrees. "[I]nappropriate prosecutorial comments, standing alone," are not sufficient to vacate "a criminal conviction obtained in an otherwise fair proceeding.'" *Matthews v. Workman*, 577 F.3d 1175, 1186 (10th Cir. 2009) (quoting *United States v. Young*, 470 U.S. 1, 11 (1985)). "The errant remarks must have so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Cuesta-Rodriguez v. Carpenter*, 916 F.3d 885 (10th Cir. 2019) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). To determine whether the challenged remarks deprived the petitioner of a fair trial, courts must consider "all the surrounding circumstances, including the strength of the state's case" and any cautionary instructions to the jury. *Hamilton v. Mullin*, 436 F.3d 1181, 1187 (10th Cir. 2006).

As discussed above, remarks about common sense and "speaking the truth" do not violate the due process clause. *See* supra, Section 1. Further, the record supports the OCCA's finding that the question "when do you want Petitioner back" did not impact the sentence. In context, the prosecutor appeared to ask the jury to impose a severe sentence because of defendant's past crimes, not because of the likelihood of future crimes:

> When you're done thinking about everything in this case … and you ask yourself what's that worth to these victims and what's it worth to the State of Oklahoma, and you come up with a number that should be extreme, should reflect how extreme these crimes were, you only have one more question to ask yourself in regards to [Petitioner]: when do you want him back?

Dkt. 10-6 at 95.

Moreover, even if the prosecutor intended, to some extent, to scare the jury, the Tenth Circuit has held "an improper appeal to societal alarm typically does not amount to a denial of due process." *Duckett v. Mullin*, 306 F.3d 982, 990 (10th Cir. 2002) (quotations omitted). *See also Brecheen v. Reynolds*, 41 F.3d 1343, 1356 (10th Cir. 1994) ("While improper appeals to societal alarm and requests for vengeance for the community to set an example are unwarranted, they are also not the type of comments that the Supreme Court has suggested might amount to a due process violation."). This is particularly true where, as here, it does not appear "the prosecutor's statements plausibly could have tipped the scales in favor of the prosecution." *Moore v. Gibson*, 195 F.3d 1152, 1171 (10th Cir. 1999). The record contains strong evidence tying Petitioner to the home invasions, including eyewitness testimony, forensic evidence, and recovered property. The jury was also instructed that "[a]rguments of counsel are not evidence in this case…" Dkt. 10-14 at 95. On this record, Petitioner has not demonstrated the prosecutor's comments changed the outcome at trial or otherwise violated his constitutional rights. The OCCA reasonably applied the law and facts to Petitioner's claim for prosecutorial misconduct, and Ground 2 fails.

**Ground 3: Ineffective Assistance of Counsel**

Petitioner finally argues that trial counsel was ineffective for failing to object to the prosecutor's remarks and failing to address the alleged instructional error. Dkt. 1 at 7; *see also* Dkt. 9-1 at 36-28. The OCCA rejected this claim under the two-prong test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. 466 U.S. at 687. To satisfy the second prong, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

11

The OCCA concluded Petitioner "cannot show that he was prejudiced by the failure of counsel to object to [Instruction No. 45]." Dkt. 9-3 at 6. The OCCA further found "Petitioner cannot show that, but for counsel's failure to object to the prosecutor's comments or his failure to request instructions on expert testimony, that a reasonable possibility exists that the result of the proceeding would have been different." *Id.*

Standing alone, the *Strickland* standard is "highly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009). And, under § 2254(d)(1), this Court's review of whether the OCCA unreasonably applied *Strickland* is "doubly deferential." *Id.* at 123. With this standard in mind, the Court is not convinced the OCCA ruling is unreasonable. Instruction No. 45 - which relates to common sense and speaking the truth - clearly comports with federal law. It is difficult to imagine how a cautionary instruction on expert testimony would have changed the result, given the other direct evidence of guilt. Finally, there is nothing in the record to suggest an objection to the prosecutors' comments could be outcome-determinative. The Court therefore finds that the OCCA properly applied the law and the facts in denying Petitioner's ineffective-assistance-of-counsel claim.

Based on the foregoing, the Court concludes Petitioner's conviction does not violate federal law. *See* 28 U.S.C. § 2254(a). The Petition must therefore be denied.

### III. Certificate of Appealability

Habeas Corpus Rule 11 requires "[t]he district court [to] . . . issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate may only issue "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the district court rejects the merits of petitioner's constitutional claims, he must

make this showing by "demonstrat[ing] that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons discussed above, Petitioner has not made the requisite showing on any of his claims. The Court therefore denies a certificate of appealability.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The petition for a writ of habeas corpus (Dkt. 1) is **denied**.

2. A certificate of appealability is **denied**.

3. A separate judgment will be entered herewith.

ORDERED this 27th day of March 2019.

TERENCE C. KERN
UNITED STATES DISTRICT JUDGE